**Nos. 2024-1600, 2024-1601, 2024-1602, 2024-1603, 2024-1604, 2024-1605**

# United States Court of Appeals for the Federal Circuit

**CAROLYN W. HAFEMAN,**
*Appellant*

v.

**GOOGLE LLC, MICROSOFT CORPORATION,**
*Appellees*

**COKE MORGAN STEWART,** Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office,
*Intervenor*

---

Consolidated Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2022-01188, IPR2022-01189, IPR2022-01190, IPR2022-01191, IPR2022-01192, IPR2022-01193.

## CAROLYN W. HAFEMAN'S REPLY BRIEF

Lawrence M. Hadley
Stephen Underwood
Jason C. Linger
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
10250 Constellation Blvd., Floor 19
Los Angeles, CA 90067
(310) 553-3000

*Attorneys for Appellant*
*Carolyn W. Hafeman*

February 20, 2025

# TABLE OF CONTENTS

**Page**

**ARGUMENT** .......... **1**

I. THE PTAB FAILED TO ADDRESS APPELLEES' VIOLATION OF THE BINDING STIPULATION. .......... 1

A. Hafeman's Challenge is Reviewable by this Court. .......... 2

B. The PTAB Failed to Address the *Sotera* Violation. .......... 4

C. This Court Need Not Address the Issue of "System Art" Estoppel, But the District Court Correctly Resolved It Anyway. .......... 8

II. THE PTAB ERRED IN CONSTRUING THE "WITHOUT ASSISTANCE BY A USER" LIMITATION. .......... 9

A. The PTAB Implicitly Construed "Without Assistance." .......... 10

B. Hafeman Has Not Forfeited Her Challenge. .......... 12

C. The PTAB's Construction of "Without Assistance" Is Erroneous. .......... 15

1. The Claim Language Supports Hafeman's Construction. .......... 16

2. The Specification Supports Hafeman's Construction. .......... 18

3. The Prosecution History Supports Hafeman's Construction. .......... 21

4. The Extrinsic Evidence Supports Hafeman's Construction. .......... 22

D. Jenne Does Not Meet the "Without Assistance" Limitation. .......... 23

III. THE PTAB ERRED IN APPLYING SECONDARY CONSIDERATIONS .......... 26

A. The PTAB Erred in Rejecting Any Nexus. .......... 26

B. The PTAB Erred in Giving No Weight to Praise, Commercial Success, and Copying of the Invention. ................29

**CONCLUSION.....................................................................................................31**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allergan, Inc. v. Sandoz Inc.*,
796 F.3d 1293 (Fed. Cir. 2015) ....................27

*Apple Inc. v. Uniloc 2017 LLC*,
843 F. App'x 281 (Fed. Cir. 2021) ....................12

*Applications in Internet Time, LLC v. RPX Corp.*,
897 F.3d 1336 (Fed. Cir. 2018) ....................3, 7

*Aqua Prods., Inc. v. Matal*,
872 F.3d 1290 (Fed. Cir. 2017) ....................7

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
35 F.4th 1328 (Fed. Cir. 2022) ....................8

*Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*,
750 F.2d 1569 (Fed. Cir. 1984) ....................27

*Avanos Med. Sales, LLC v. Medtronic Sofamor Danek USA, Inc.*,
2021 WL 8693677 (W.D. Tenn. 2021)....................8

*Barnes v. Owens-Corning Fiberglas Corp.*,
201 F.3d 815 (6th Cir. 2000) ....................29

*Baxalta Inc. v. Genentech, Inc.*,
972 F.3d 1341 (Fed. Cir. 2020) ....................18

*Biscotti Inc. v. Microsoft Corp.*,
2017 WL 2526231 (E.D. Tex. 2017)....................8

*Bos. Sci. Corp. v. Cook Grp. Inc.*,
653 F. Supp. 3d 541 (S.D. Ind. 2023)....................8

*Caltech v. Broadcom Ltd.*,
2018 WL 7456042 (C.D. Cal. 2018) ....................8

*Corephotonics, Ltd. v. Apple Inc.*,
84 F.4th 990 (Fed. Cir. 2023) ....................................................................25

*Corning v. Fast Felt Corp.*,
873 F.3d 896 (Fed. Cir. 2017) ....................................................................24

*Cuozzo Speed Techs. v. Com. for Intell. Prop.*,
579 U.S. 261 (2016)....................................................................................3, 4

*Dell Inc. v. Acceleron, LLC*,
818 F.3d 1293 (Fed. Cir. 2016) ..................................................................14

*Facebook, Inc. v. Windy City Innovations, LLC*,
973 F.3d 1321 (Fed. Cir. 2020) ....................................................................4

*Fox Factory, Inc. v. SRAM, LLC*,
944 F.3d 1366 (Fed. Cir. 2019) ..................................................................26

*Fred Beverages, Inc. v. Fred's Cap. Mgmt. Co.*,
605 F.3d 963 (Fed. Cir. 2010) ......................................................................6

*Golden Bridge Tech., Inc. v. Apple Inc.*,
758 F.3d 1362 (Fed. Cir. 2014) ....................................................................5

*Google LLC v. EcoFactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) ........................................................ 11, 12, 13

*Henny Penny Corp. v. Frymaster LLC*,
938 F.3d 1324 (Fed. Cir. 2019) ........................................................ 26, 28, 29

*HTC Corp. v. Cellular Commc'ns Equip., LLC*,
877 F.3d 1361 (Fed. Cir. 2017) ..................................................................13

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ....................................................................15

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ..................................................................14

*In re Vivint, Inc.*,
14 F.4th 1342 (Fed. Cir. 2021) ........................................................... 5, 6, 9

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 784 (Fed. Cir. 2021) ....................................................................16

*Kearns v. Chrysler Corp.*,
32 F.3d 1541 (Fed. Cir. 1994) ...................................................................5, 7

*Liberty Ammunition, Inc. v. U.S.*,
835 F.3d 1388 (Fed. Cir. 2016) ....................................................................17

*Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*,
68 F.4th 1298 (Fed. Cir. 2023) ....................................................................30

*Medtronic, Inc. v. Teleflex Innovations S.a.r.l.*,
70 F.4th 1331 (Fed. Cir. 2023) ....................................................................30

*Mylan Lab's Ltd. v. Janssen Pharmaceutica, N.V.*,
989 F.3d 1375 (Fed. Cir. 2021) ......................................................................3

*N.M. Farm & Livestock Bureau v. U.S. Dep't of Interior*,
952 F.3d 1216 (10th Cir. 2020) ......................................................................5

*Nelson v. Adams USA, Inc.*,
529 U.S. 460 (2000)......................................................................................30

*Netflix, Inc. v. DivX, LLC*,
80 F.4th 1352 (Fed. Cir. 2023) ....................................................................27

*NetworkIP, LLC v. F.C.C.*,
548 F.3d 116 (D.C. Cir. 2008)........................................................................6

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*,
2019 WL 861394 (N.D. Ill. 2019) ..................................................................8

*ParkerVision, Inc. v. Qualcomm Inc.*,
903 F.3d 1354 (Fed. Cir. 2018) ....................................................................25

*PersonalWeb Techs., LLC v. Apple, Inc.*,
917 F.3d 1376 (Fed. Cir. 2019) ....................................................................25

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
882 F.3d 1056 (Fed. Cir. 2018) ............................................................. 27, 28

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*,
815 F.3d 734 (Fed. Cir. 2016) ....................................................................28

*Qualcomm Inc. v. Intel Corp.*,
6 F.4th 1256 (Fed. Cir. 2021) ....................................................................14

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*,
716 F. App'x 965 (2017) ....................................................................24

*Ring & Pinion Serv. Inc. v. ARB Corp.*,
743 F.3d 831 (Fed. Cir. 2014) ....................................................................5, 7

*SAS Inst., Inc. v. Iancu*,
584 U.S. 357 (2018)....................................................................3

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
164 F.3d 1372 (Fed. Cir. 1998) ....................................................................17

*Thryv, Inc v. Click-To-Call Techs., LP*,
590 U.S. 45 (2020)....................................................................4

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
595 F.3d 1340 (Fed. Cir. 2010) ....................................................................17

*U.S. v. Nelson*,
868 F.3d 885 (10th Cir. 2017) ....................................................................29

*Uniloc 2017 LLC v. Facebook Inc.*,
989 F.3d 1018 (Fed. Cir. 2021) ....................................................................4

*Univ. of Strathclyde v. Clear-Vu Lighting LLC*,
17 F.4th 155 (Fed. Cir. 2021) ....................................................................25

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ....................................................................11

*Voice Tech Corp. v. Unified Pats., LLC*,
110 F.4th 1331 (Fed. Cir. 2024) ....................................................................6

*Volvo Penta of the Americas, LLC v. Brunswick Corp.*,
81 F.4th 1202 (Fed. Cir. 2023) .................................................... 27, 28, 29

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*,
432 F. Supp. 3d 448 (D. Del. 2020)........8

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016)........26

*Wirtgen Am., Inc. v. Caterpillar, Inc.*,
2024 WL 51010 (D. Del. 2024)........8

**STATUTES**

35 U.S.C. § 314(d)........2, 3, 4

35 U.S.C. § 315(b)........3

5 U.S.C. § 706........2

**REGULATIONS**

37 C.F.R. § 42.12........6

**OTHER AUTHORITIES**

MPEP 2164.02........27

Restatement (Second) of Judgments § 40 (1982)........5

Hafeman submits this reply to the answering briefs of Appellees Google and Microsoft ("G-Br.") and Intervenor USPTO ("I-Br."). The FWDs cannot be sustained due to the PTAB's failure to address a binding stipulation submitted in the IPRs (Section I); the PTAB's erroneous determination that the limitation "initiating or changing [return/recovery] information … through remote communication without assistance by a user" still allows a user to logon to a device and establish a network connection (Section II); and the PTAB's multiple errors in rejecting all secondary considerations of non-obviousness (Section III).

## ARGUMENT

### I. THE PTAB FAILED TO ADDRESS APPELLEES' VIOLATION OF THE BINDING STIPULATION.

Appellees submitted a stipulation to the PTAB, and they obtained a significant benefit from it, as the PTAB applied it to institute six IPRs. Appx8100. The PTAB held that the stipulation would "mitigate[] concerns of potentially conflicting decisions and duplicative efforts between the district court and the PTAB." *Id.* But the stipulation did nothing. Twelve days before trial, the district court found that the stipulation had been violated and that Hafeman was forced to defend a "materially identical" challenge in district court and before the PTAB. Appx7676-77. But there was only so much the district court could do on the eve of trial. Hafeman had to defend this challenge to her patents through discovery and summary judgment, and

for the entire duration of the IPRs. Hafeman requested that the IPRs be terminated, but the PTAB ignored the issue entirely in its FWDs, in violation of the APA.

Appellees and Intervenor ask this Court to do nothing as well. But under settled law, a tribunal is bound to enforce the stipulations entered in its proceedings. The PTAB is obligated to provide some explanation for its decision-making, whether it pertains to a question of patentability or another issue. Appellees and Intervenor's arguments are meritless.[1]

### A. Hafeman's Challenge is Reviewable by this Court.

Hafeman's challenge is not barred by § 314(d) because she is challenging the PTAB's FWDs under the APA, 5 U.S.C. § 706, and the PTAB's failure to address the stipulation in those FWDs. Hafeman is not challenging how the PTAB made its "determination … whether to institute." Rather, Hafeman is challenging how the IPR proceeded *after* institution. Indeed, it was not until after institution, which triggered the stipulation taking effect, that the stipulation was violated. Both the filing of the motion for summary judgment and the court's decision on the violation occurred months after the PTAB's grant of institution. Appx7637, Appx7676.

---

[1] Appellees attempt to introduce and discuss other material from the district court that was not part of the IPR record or the parties' initial designation of materials in violation of Fed. Cir. Rule 30. G-Br., 12-14 (starting at Appx11563). If considered, Hafeman notes that LG further violated the stipulation in multiple ways during trial. *Hafeman v. LG Elecs. Inc.*, No. 6:21-cv-00696-ADA (Dkt. No. 262).

APA challenges of FWDs are reviewable. *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 371 (2018) ("judicial review remains available consistent with the [APA], which directs courts to set aside agency action not in accordance with law or in excess of statutory jurisdiction, authority, or limitations."); *Cuozzo Speed Techs. v. Com. for Intell. Prop.*, 579 U.S. 261, 275 (2016) ("arbitrary and capricious" agency decisions are reviewable under the APA); *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1353 (Fed. Cir. 2018) (finding APA violation where the PTAB failed to analyze rigorously a real party-in-interest issue in the FWD).

*Mylan* does not bar Hafeman's challenge. G-Br., 24-25. In *Mylan*, petitioner attempted to appeal a denial of institution; no final written decision ever issued. The Court found that "no statute confers jurisdiction over appeals from decisions denying institution," particularly as "no petitioner has a right to institution." *Mylan Lab's Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1379, 1382 (Fed. Cir. 2021). Here, Hafeman is challenging the PTAB's failure to address the violation of a stipulation in FWDs cancelling three of her patents—a violation that should have resulted in FWDs decided in Hafeman's favor.

Nor does *Thryv* bar Hafeman's APA challenge. I-Br., 14. *Thryv* held that the PTAB's application of § 315(b)'s time limit to a lawsuit filed *previously* to the IPR "is closely related to its decision whether to institute [IPR] and is therefore nonappealable by § 314(d)." *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 48

(2020). Here, unlike *Thryv*, Hafeman is not challenging the "application of an institution-related statute" based on facts at the time of institution, but instead, whether the PTAB complied with the APA by failing to consider critical developments *after* institution. *Thryv*, 590 U.S. at 58 ("nothing in § 314(d) or *Cuozzo* withdraws our power to ensure that an [IPR] proceeds in accordance with the law's demands"; distinguishing its holding from challenges involving "the manner in which the agency's review proceeds").

Post-*Thryv*, this Court has held that where an event leading to IPR termination occurs post-institution, like here, such challenges may be appealed. *Uniloc 2017 LLC v. Facebook Inc.*, 989 F.3d 1018, 1027 (Fed. Cir. 2021) (challenge was reviewable because "no cause for termination at the time of petition existed and the basis for termination developed while the proceeding was ongoing"); *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1332 (Fed. Cir. 2020) (challenge was reviewable because "the joinder decision is made after a determination that a petition warrants institution, thereby affecting the manner in which an IPR will proceed").

### B. The PTAB Failed to Address the *Sotera* Violation.

Appellees argue that the stipulation only took "effect" in district court. G-Br., 2, 30; I-Br., 16-17. That argument ignores that *Sotera* stipulations are a creature of the PTAB for IPRs, that Appellees submitted the stipulation in the IPRs, and that the

PTAB cited it as a basis to grant institution. Appx8100-01. The stipulation thus became Appellees' agreement to the PTAB.

Under settled precedent, the stipulation was binding on Appellees in the IPRs when they submitted it in the IPRs, and the PTAB committed "legal error" by not enforcing it. *Ring & Pinion Serv. Inc. v. ARB Corp.*, 743 F.3d 831, 836 (Fed. Cir. 2014) ("A stipulation of fact that is fairly entered into is controlling on the parties and the court is generally bound to enforce it.") (finding "legal error" not to enforce stipulation and reversing judgment below); *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1366 (Fed. Cir. 2014) (stipulation made to USPTO was binding in both the USPTO and district court); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1546 (Fed. Cir. 1994) ("A person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement.") (citing Restatement (Second) of Judgments § 40 (1982)); *Sinicropi v. Milone*, 915 F.2d 66, 69 (2d Cir. 1990) ("The district court thus had a duty to enforce the stipulation which it had approved."). The PTAB's decision to not enforce Appellees' IPR agreement was "legal error" and "must" be set aside. *In re Vivint, Inc.*, 14 F.4th 1342, 1351 (Fed. Cir. 2021).

Not enforcing the rules that an agency creates—and asking other courts to do it for you—is unreasonable agency action that violates the APA. *N.M. Farm & Livestock Bureau v. U.S. Dep't of Interior*, 952 F.3d 1216, 1231 (10th Cir. 2020)

("When an agency does not comply with its own regulations, it acts arbitrarily and capriciously."); *NetworkIP, LLC v. F.C.C.*, 548 F.3d 116, 127 (D.C. Cir. 2008). It is also arbitrary and capricious to apply an agency's rules inconsistently, which is what occurred here. *Vivint*, 14 F.4th at 1352-54; *Fred Beverages, Inc. v. Fred's Cap. Mgmt. Co.*, 605 F.3d 963, 967 (Fed. Cir. 2010). The PTAB granted institution based on the stipulation. Appx8100. When Hafeman moved for rehearing, the PTAB wrote in an email (discussed further below) that the stipulation applied *only* in district court. Appx7830. Then, after the district court's decision, the PTAB ignored the issue in the FWDs.

Appellees and Intervenor contend that the PTAB's silence in the FWDs was justified because it had addressed the stipulation in a March 2023 email (Appx7830) denying Hafeman's request for rehearing of the institution decisions. G-Br., 26, 29-30; I-Br., 20.[2] The PTAB's email does not justify the FWDs' silence on this issue for multiple reasons.

First, the PTAB's email was sent *prior to* the court's April 2023 order finding the stipulation to be violated. Appx7676-77. Appellees concede that the email did

---

[2] Hafeman's rehearing request was "optional." *Voice Tech Corp. v. Unified Pats., LLC*, 110 F.4th 1331, 1339 (Fed. Cir. 2024). Hafeman was relying on new PTAB precedent issued outside of her rehearing window. Appx7832. Nor is there any requirement to file a sanctions motion. 37 C.F.R. § 42.12. Sanctions were not sought or awarded in *AIT* either.

not and could not address the court's ruling. G-Br., 29 ("the district court had not yet ruled on LG's summary judgment motion"). The PTAB never offered an explanation for proceeding with the six IPRs after the court's ruling. *AIT*, 897 F.3d at 1353 ("The Board's selective weighing of the record evidence does not pass muster under the APA. Just as it may not short-cut its legal analysis, the Board may not short-cut its consideration of the factual record before it.").[3]

Second, the email was "legal error" because the stipulation was enforceable in the IPRs, not only district court. *Ring & Pinion*, 743 F.3d at 836; *Kearns*, 32 F.3d at 1546. The PTAB sent the email less than one business day after Hafeman's request, without hearing or briefing, and *84 minutes* after Appellees provided additional information on their position. Appx7830-31. Under PTAB rules, Hafeman was not permitted to present any authority or argument in her email. The PTAB's hurried and unreasonable response cannot be sustained under the APA.

Finally, Appellees contend that the PTAB was not "required" to address this issue. G-Br., 27-28. But under the APA, "an agency must explain why its decides *any question* the way it does." *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017) (en banc plurality) (emphasis added); *AIT*, 897 F.3d at 1351-52 (APA

[3] Intervenor attempts a sleight of hand by addressing the PTAB's email and district court order in reverse chronological order to suggest that the email somehow took into account the district court's order, when it did not. I-Br., 10-11.

violation where PTAB conducted an "impermissibly shallow" analysis of real party-in-interest, not a patentability question). The PTAB needed to address this issue.

### C. This Court Need Not Address the Issue of "System Art" Estoppel, But the District Court Resolved It Correctly.

Appellees attempt to differentiate the IPR challenge from the district court challenge. G-Br., 14-15, 26-31. But the court's ruling—that these challenges were "materially identical"—cannot be reviewed here. G-Br., 2 (identifying issues for appeal). As Intervenor states, "the district court's analysis of the estoppel effect of LG's *Sotera* stipulation is not before the Court in this appeal …" I-Br., 15.

If considered, the court's analysis was sound. The court found the two challenges to be "materially identical." Appx7676-77. Both contested the written description support of the "initiating" limitation and used "references," such as Hafeman's patents and products, that all agreed would practice the claims.[4] LG

---

[4] This Court has held that the PTAB has authority to resolve written description challenges during IPRs. *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1345 (Fed. Cir. 2022).

The application of estoppel to "system art" is not a "minority" view, as Appellees contend. At least seven other district courts in six different jurisdictions have done so, including by then-District Judge Stark. *Bos. Sci. Corp. v. Cook Grp. Inc.*, 653 F. Supp. 3d 541, 594 (S.D. Ind. 2023), *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 454 (D. Del. 2020) (Stark, D.J.), *Wirtgen Am., Inc. v. Caterpillar, Inc.*, 2024 WL 51010, *9 (D. Del. 2024), *Avanos Med. Sales, LLC v. Medtronic Sofamor Danek USA, Inc.*, 2021 WL 8693677, *2 (W.D. Tenn. 2021), *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 2019 WL 861394, *10 (N.D. Ill. 2019), *Caltech v. Broadcom Ltd.*, 2018 WL 7456042, *10-16 (C.D. Cal. 2018), *Biscotti Inc. v. Microsoft Corp.*, 2017 WL 2526231, *8 (E.D. Tex. 2017).

offered scant discussion of the alleged "references," grounded *only* in the party's admissions. Appx7653. As the district court found, "there is no substantive difference between these alleged references." Appx7676-77. The PTAB found that the IPRs challenging written description were exclusively focused on that issue, and declined to analyze the "references." Appx9037, Appx9039. For all intents and purposes, this was exactly the same challenge in both IPR and district court.

* * *

The PTAB should have terminated the IPRs in light of the *Sotera* violation, or at minimum, addressed why the IPRs should proceed in the FWDs. This Court should vacate and remand with instructions to dismiss. *Vivint*, 14 F.4th at 1354.

## II. THE PTAB ERRED IN CONSTRUING THE "WITHOUT ASSISTANCE BY A USER" LIMITATION.

The parties dispute whether "initiating or changing [return/recovery] information … through remote communication without assistance by a user" should be construed to preclude a user from logging on and establishing a connection on the lost or stolen device. This is because the Jenne reference undeniably requires the user take these actions. Appellees argue that logging on and establishing a connection is not "assistance by a user." Appellees are wrong.

The claims require that there be no "assistance" by the user in "initiating" or "changing" "[return/recovery] information" via "remote communication." Appellees assert this limitation still permits a "thief" "to go online with the stolen

computer." G-Br., 45. This absurd argument is contrary to the claim language and would destroy Hafeman's patented invention. The record demonstrates that a thief cannot "go online," access files, or do anything else with the device.

The PTAB ignored most evidence in finding that Jenne disclosed the "without assistance" limitation. The PTAB conducted a flawed claim construction analysis of "without assistance," in which the PTAB misinterpreted the specification's discussion of two prior art systems (PDA and McAfee Anti-Virus) to be an embodiment of the claimed invention, based on evidence and argument never presented by Appellees in the IPRs. In doing so, the PTAB rendered the "without assistance" term a nullity. Under the legally correct construction, Jenne does not meet the "without assistance" limitation because Jenne requires the person with the device to connect to the Internet.

### A. The PTAB Implicitly Construed "Without Assistance."

The PTAB engaged in implicit claim construction. The PTAB reviewed the claim language, specification, and prosecution history. It relied on claim construction precedent from this Court. It found, based on that precedent, that it would "view" and "interpret the claim" in a particular way. And it determined that a particular user action—establishing a remote connection—was outside the scope and boundaries of the "without assistance" term, even though "remote communication" is part of the same limitation. Appx20-24.

The FWDs found that "establishing the remote communication" is not "assistance." Appx21 ("the language 'without assistance by a user' refers to the specific recited action of 'initiating or changing [return/recovery] information,' rather than to an unrecited action of establishing the remote communication in the first instance."). Appellees argued, and the PTAB agreed, that "establishing an Internet connection is not prohibited 'assistance.'" Appx8241. These statements about what is, and is "not," the patented subject matter constitute claim construction. *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1055 (Fed. Cir. 2024) ("If the outcome of the analysis of the claim term establishes the scope (e.g., boundaries) and meaning of the patented subject matter, the court (or the Board) has mostly likely construed the claim.").

The FWDs relied on claim construction precedent. Appx22. In stating that it would decline to "interpret" the claim in Hafeman's favor, the PTAB cited *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996) (determining "the proper construction of the claim term"). This firmly supports the conclusion that the PTAB engaged in claim construction. *EcoFactor*, 92 F.4th at 1056 (implicit claim construction occurred where "[e]ach of the cases the Board cited relates to interpreting claims in the claim construction context.").

It is Appellees, not Hafeman, that misapply *EcoFactor*. Hafeman's opening brief ("Op.-Br.") explained how the PTAB implicitly construed this term. Op.-Br.,

40-44. Appellees contend that the PTAB did not engage in claim construction because the PTAB was "making a comparison between the [Jenne] prior art and the challenged patents' specification." G-Br., 34. Comparing the patent to the prior art does not erase a claim construction analysis. "Claim construction may be undertaken prior to or in tandem with the tribunal's review of the allegedly infringing technology or prior art." *EcoFactor*, 92 F.4th at 1055. Here, claim construction occurred because the PTAB made conclusions about the scope and boundaries of the "initiating or changing … through remote communication without assistance" term. Appx21-22.

This Court should review the PTAB's implicit construction de novo, as it did in *EcoFactor*.[5]

**B. Hafeman Has Not Forfeited Her Challenge.**

Appellees suggest that Hafeman forfeited her construction because she did not propose an express construction below. G-Br., 32, 35, 36. But Hafeman was not required to do so. *EcoFactor*, 92 F.4th at 1054 ("Neither party explicitly argued for claim construction to resolve the issue.") ; *HTC Corp. v. Cellular Commc'ns Equip.,*

[5] In *Uniloc*, cited by Appellees, the PTAB compared the prior art to an undisputed feature of the invention recited in the claim themselves (the "record mode"). *Apple Inc. v. Uniloc 2017 LLC*, 843 F. App'x 281, 286 (Fed. Cir. 2021). Here, the PTAB misinterpreted the specification's discussion of prior art.

*LLC*, 877 F.3d 1361, 1367 (Fed. Cir. 2017) (finding claim construction "properly before [this Court] on appeal" where appellant did not "seek construction of the term" in IPR).

Hafeman argued that Jenne did not meet this limitation based on the intrinsic record. Appx8184-88. And as she does here, Hafeman presented evidence, including Figure 4, showing that "turning on the device" is not "assistance" (Appx8186, Appx8295), given that a dead device is not capable of much of anything, such as "activating a processor" or displaying a "security prompt"—as the claims also recite.

*EcoFactor* does not, contrary to Appellees' assertion, require "the Board [to] change[] its position from the institution decision to the final written decision." G-Br., 32, 35. An implicit claim construction is based "on the outcome of the tribunal's analysis" and whether it establishes the "scope" or "meaning of the patented subject matter." *EcoFactor*, 92 F.4th at 1055 ("[t]he point in the proceeding at which the analysis occurs is not dispositive."). Here, the FWDs established the scope, boundaries, and meaning of the "without assistance" term. Appx21-22.

Nor did Hafeman have "fair warning" of the PTAB's implicit claim construction analysis. G-Br., 35. The part of the specification that the PTAB used for its implicit construction (indeed, it is the PTAB's very first finding on this issue), regarding the prior art PDA and McAfee systems (Appx21-22 (citing Appx131,

14:22-40)), was ***never*** cited by either Hafeman or Appellees in the IPRs.[6] It was first raised by a member of the PTAB at oral argument. Appx8523. Thus, Hafeman was given no opportunity to supply any evidence or argument on this part of the specification. *Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256, 1265 (Fed. Cir. 2021) ("the hearing did not provide an adequate opportunity to respond."); *Dell Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1301 (Fed. Cir. 2016). The PTAB's reliance on an argument never made by Appellees was erroneous and justifies this Court's de novo review. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016) ("the Board must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond").

The PTAB did not address in the institution decisions the issue presented here: whether the user establishing a connection is "assistance by a user." Appx8108-10. That is because Hafeman did not argue in her pre-institution briefing that establishing a remote connection was "assistance." Instead, she argued that Jenne did not disclose this limitation for a separate reason: Jenne's user must provide their likes and dislikes regarding advertised products. Appx8036-37. It was not until her post-institution briefing that Hafeman argued that establishing a connection constituted user assistance. Appx8184-88, Appx8293-94 ("This argument was not

[6] As discussed below, the PTAB misinterpreted this part of the specification. The "go on-line" language refers to McAfee, not the claimed invention.

presented in the POPR, and thus, has not yet been considered by the Board."). The PTAB thus engaged in implicit claim construction for the first time in the FWDs. Hafeman had no opportunity to "change the Board's mind" on this issue, as Appellees incorrectly state. G-Br., 35.

Appellees cite to *In re Google* (G-Br., 35), which arose from an examiner's rejection of a pending application. *Google* confirmed that this Court is "permitted" to review express claim constructions raised on appeal. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020). But the Court declined to do so because the applicant provided no "reasonable explanation" for doing so given "the iterative examination process" and the applicant's additional opportunity to present a construction to the PTAB. *Id.* Here, Hafeman had no similar opportunity.[7]

A correct claim construction analysis is required.

### C. The PTAB's Construction of "Without Assistance" Is Erroneous.

Appellees argue that Hafeman's construction of "without assistance"—*i.e.*, no assistance, including the user establishing a network connection—is not consistent with the intrinsic or extrinsic evidence. G-Br., 37. Each source of evidence supports Hafeman's construction.

---

[7] Appellees feign confusion based on Hafeman's use of the word "receiving." G-Br., 36. But Appellees paraphrased the claim language in the same way in their petitions. Appx7936 ("remote equipment [] *receive[s]* instructions related to changing the displayed return/recovery information.").

### 1. The Claim Language Supports Hafeman's Construction.

In the claimed invention, the "owner" of the computer has the ability to "initiat[e] or chang[e] [return/recovery] information … through remote communication without assistance by a user with the computer." Appx132. The "user" is blocked by a "security prompt," which "prevents the user from accessing operatively the computer." *Id.*

Appellees argue that "without assistance" limitation still allows the user to log on and establish a connection, but they offer no claim support for this exception. Appellees' construction is further contradicted by the "security prompt" limitation, which Appellees ignore. G-Br., 37-39; *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 792 (Fed. Cir. 2021) ("our [claim construction] inquiry is not limited to an analysis of the phrase in isolation" and should "examin[e] the surrounding the claim language"). The "without assistance by a user" and "security prompt" limitations, read together, "prevent[]" the person with the lost or stolen device, such as a thief, from "accessing operatively the computer."

Appellees contend that "without assistance" only "modifies" "initiating or changing" return/recovery information, but not the "unrecited" step of "connecting it to a remote network." G-Br., 38. Thus, according to Appellees, there can still be "assistance" for other, unrecited steps, based on the "comprising" term. *Id.* That makes no sense. The "remote communication" term—the method by which the

owner communicates with the device—appears directly next to and is part of the same limitation. Appx132 ("initiating or changing return information which appears on the display *through remote communication* without assistance by a user").

The term "comprising" cannot be extended so broadly as to abrogate the "without assistance by a user" and "security prompt" limitations. *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998) ("'Comprising' is not a weasel word with which to abrogate claim limitations."); *Liberty Ammunition, Inc. v. U.S.*, 835 F.3d 1388, 1399 (Fed. Cir. 2016) (refusing to interpret claim term in a manner that would render other claim term a "nullity"); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1354 (Fed. Cir. 2010) (rejecting broad use of "comprising" that would "negate[] a claimed requirement").

Even if the limitation were read in isolation, as Appellees urge based on "grammar" (G-Br., 38), Hafeman's construction is still correct. "Initiating" or "changing … through remote communication" means having an available "remote communication" method. Appx8295-96. Thus, a connection is a part of the process. The claims make clear that ***no*** "assistance by a user" is involved in these processes. The term "without assistance" thus precludes the user from taking any action to establish "remote communication."

### 2. The Specification Supports Hafeman's Construction.

Appellees largely ignore Hafeman's explanation of how the specification supports her construction of "without assistance." Op.-Br., 36-38. As soon as the computer is "turned on," the return/recovery information is displayed, and this information can be remotely "customized" "on the fly" and "anytime" by the owner, including when the device changes location, and if the owner loses possession of the device. Appx127-28, 6:9-19, 8:27-36. The owner has "ultimate control" over the recovery screen and the return/recovery information displayed. Appx130, 12:12-17.

First, Appellees argue that Hafeman only cited to "five lines" of the specification when she amended her claims during prosecution. G-Br., 39. But Appellees cite no authority for their assertion that claim construction is determined only by the parts of the specification cited during prosecution to support a claim amendment. The entire specification must be considered. *Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1347 (Fed. Cir. 2020).

The specification amply describes the owner's remote communication capability. *E.g.*, Appx129-31, 10:61-11:3 ("The apparatus preferably includes means for changing the return information by the user through remote communication with the computer. … The apparatus preferably includes means for changing recovery information of additional computers owned by the owner through remote communication by the owner with the additional computers."), 11:15-29, 13:35-42.

Second, Appellees point to the specification's reference to "phone line" or "cable" as two of five communication methods. G-Br., 40. But these are just exemplary ways to carry out the invention, and the specification further lists three additional methods, "Satellite," "WI-FI," and "bluetooth"—none of which would require the physical act of plugging in a cable—in addition to "any other type of remote communication." The claims are not limited to cable-based communication methods; they more broadly recite "remote communication." Even for the "phone line" and "cable" examples, the computer could still be connected by the "owner," and not the "user," as Appellees concede. G-Br., 40.

Third, Appellees point to the specification discussion of the PDA and McAfee prior art that was raised by the PTAB at oral argument. G-Br., 40-41; Appx131, 14:22-40; Appx8523. The "every time you go on-line" language refers to "hav[ing] the most current anti-virus software," which applies to McAfee. The claims do not recite any PDAs or anti-virus software. Both PDA and McAfee are "completely controlled by the equipment user," not the owner. Appx130, 11:51-60, 12:60-62. In contrast, in Hafeman's invention, the owner "seizes control of the display monitor until a security prompt is satisfied." Appx131, 14:22-40. The specification confirms: "the 'owner' can control both the owner information and all the 'assigned to' recovery information at the recovery center level, and then attempt to communicate this to the protected equipment …" Appx128-31, 14:17:20, 12:14-17 (owner has

"ultimate control of (1) the program, (2) the recovery screen and (3) the password—not the person who is using the equipment."), 13:54-60 (owner can "eliminate erroneous or misleading" information created by the user and shut off the user's access), 8:34-36 (traveling owner may "change the recovery/return information at any time"). The PTAB erred in finding that McAfee's "go on-line" language meant that the claimed invention requires the user to "go on-line." Appx21-22.

Finally, Appellees contend that Figure 3 does not illustrate the "initiating" or "changing" steps, only the "display" steps. G-Br., 43. Not so. As shown below, the information "displayed" in Figure 3— "[return/recovery] information"—is precisely what is being "initiated" or "changed" by the owner:




*FIG.3*

Appx117; Appx127, 6:4-8 ("the monitor of the computer 12 will display the complete and current recovery/return information that the program has allowed the owner of the equipment to interactively enter, change and update at anytime.").

### 3. The Prosecution History Supports Hafeman's Construction.

The prosecution history demonstrates that no user assistance is allowed to initiate or change the return/recovery information. Op.-Br., 38-40. That is how Hafeman distinguished the Broyles prior art, as Broyles required the user to press a key to initiate changes to its ownership tag. Appx1141-43.

Appellees argue that Broyles is different from Jenne because pressing a key is distinct from "connecting the computer to a network." G-Br., 44. But Appellees do not explain, and Jenne does not teach, how Jenne's user could connect to the Internet without touching a key. Jenne's user provides assistance by touching a key when selecting an Internet connection and launching a browser. Appx888, ¶ 27 ("The Internet browser 545 can be connected with the Internet 525 ***by the user*** …").

Next, Appellees argue that the Norton product cited by Hafeman during prosecution does not support Hafeman's construction because Norton "says nothing about how the network connection was made." G-Br., 45. That is incorrect. Appx3064 (Norton has "means for downloading desired information by the owner from a remote location to the computers to appear on the screens of the users"). Norton's product does not require user assistance to download such information.

Appx3057-59, Appx3061 ("The Symantec/Norton product performs the step of initiating and controlling remotely by the owner of the computers the display on the screens of the users without assistance by the users …"). Appellees point to a Norton product sheet stating it tracks geolocation "when anyone uses it to go online" and "[w]orks securely over the Internet," Appx3082. But these relate to other modes in Norton, the "Locate" and "Web Control" features, not the "Remote Lock" and "Lost Notification" features described by Hafeman. Appx3082. Hafeman's claims recite "remote communication," and one example is "the Internet." Appx132, 16:37-40. Like Norton, the claimed computer may have Internet access, but the owner does not need user assistance to initiate or change the return/recovery information.

**4. The Extrinsic Evidence Supports Hafeman's Construction.**

If extrinsic evidence is considered, Appellees contend that Hafeman did not establish that "iPhones or other smartphones" had the capability to automatically connect to the Internet "in 2002." G-Br., 46. That was not Hafeman's argument. Hafeman argued, in response to Appellees' argument that all devices (past and present) require a connection made by the user (Appx8241-42), that in the patented invention, "a connection be established automatically without any involvement by the user" when "[t]he user simply turns on the device." Appx8295. Hafeman compared the process to the Google and Microsoft Find My Device products accused of infringement—as Appellees' expert confirmed, when these devices are simply

turned on, a connection is automatically established and a customizable message is displayed without any assistance by the user. Appx3792, Appx3855, Appx4564-65.

### D. Jenne Does Not Meet the "Without Assistance" Limitation.

The only way that Jenne teaches a user may connect to the Internet is through the user in possession of the device. Appx888, ¶ 27. Appellees' expert testified that Jenne teaches no other way. Appx7774, 76:15-16. Jenne's Figure 1 confirms that its software will not "check for updates and download" (block 65)—the process relied on by Appellees in the petitions (Appx7937)—unless an Internet connection is established by the user (block 55):




Appx884. Jenne teaches no method by which an owner can remotely initiate, change, or seize control of the alleged return/recovery information. Thus, Jenne does not

satisfy the limitation "the initiating or changing [return/recovery] information which appears on the display through remote communication without assistance by a user."

Appellees argue that a remand on claim construction is justified because they presented two "alternative" arguments by which Jenne could meet Hafeman's construction. G-Br., 47. A remand is not required on either the legally correct construction of "without assistance by a user" or whether Jenne meets it, as the Court can resolve both issues without further factual development. *Corning v. Fast Felt Corp.*, 873 F.3d 896, 901 (Fed. Cir. 2017) ("it is not necessary or appropriate to remand for the Board to reassess the evidence in light of the correct claim construction. On the evidence and arguments presented to the Board, there is only one possible evidence-supported finding …").

Neither of Appellees' "alternative" arguments is persuasive. First, Appellees argue that Jenne "says can, not must," so someone else could connect to the Internet. G-Br., 48. But, as Appellees' expert admitted, only the user can connect Jenne's device to the Internet. Appx7774, 76:15-16; *cf. Rembrandt Patent Innovations, LLC v. Apple, Inc.*, 716 F. App'x 965, 973 (2017) (finding that claims "required" a feature even though the abstract stated the invention "*can* be augmented" with the feature).

Appellees admit that their argument requires an extremely limited set of conditions: the "owner" must connect the device and the device must stay in the exact same location. Appellees did not take this position in the IPR petitions and it

is contrary to the claimed invention's ability to retrieve lost or stolen computers "at any time." *ParkerVision, Inc. v. Qualcomm Inc.*, 903 F.3d 1354, 1363 (Fed. Cir. 2018) (claims not obvious when met "only under certain conditions" and petitioner waited until its reply brief to explain why a POSITA would select those conditions); *PersonalWeb Techs., LLC v. Apple, Inc.*, 917 F.3d 1376, 1382 (Fed. Cir. 2019) ("While it is possible that [the prior art] system [discloses the limitation], mere possibility is not enough.").

Second, Appellees argue that a POSITA could have implemented the combination of Jenne and Cohen to meet this limitation. G-Br., 49. But Appellees do not dispute that they relied exclusively on Jenne for this limitation. Appx7934 ("Jenne's updates are 'without assistance by a user with the computer.'"). The other reference, Cohen, cannot disclose this limitation as it undisputably has no "remote communication." Appx890-97. Thus, Appellees may not use Cohen to save Jenne for this limitation. *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1002 (Fed. Cir. 2023) (PTAB "must" "reject any entirely new theory of prima facie obviousness absent from the petition"); *Univ. of Strathclyde v. Clear-Vu Lighting LLC*, 17 F.4th 155, 162 (Fed. Cir. 2021) (reversing obviousness finding where claim element was not found in any prior art of record).

* * *

The proper construction of "without assistance" is no assistance, including the establishment of an Internet or network connection, and Jenne does not disclose it.

## III. THE PTAB ERRED IN APPLYING SECONDARY CONSIDERATIONS.

### A. The PTAB Erred in Rejecting Any Nexus.

The Retriever is the invention expressly referenced and claimed in the Hafeman patents, thus entitling Hafeman to a presumption of nexus. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329 (Fed. Cir. 2016) (products were embodiments of the claimed invention). Hafeman is entitled to a presumption as The Retriever was used an alleged anticipatory reference in district court. *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1334 (Fed. Cir. 2019) (patent owner was entitled to a presumption of nexus where petitioner admitted at oral argument the product was "commensurate in scope with the claims"). Even without a presumption, however, Hafeman proved nexus by showing that the praise, commercial success, and copying of The Retriever were a direct result of the characteristics of the claimed invention. *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019). The PTAB erred in rejecting any nexus. Appx28-29.

First, Appellees argue that "The Retriever" was a "prophetic example," not reduced to practice when Hafeman filed her initial application "in 2002." Hafeman filed her relevant application on September 20, 2004 (App. No. 10/945,332), and it is 2004, not 2002, to which Hafeman is claiming priority. Op.-Br., 14. "Prophetic"

inventions not reduced to a "working" product when the patent is filed may still be patented. MPEP 2164.02; *Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1310 (Fed. Cir. 2015) ("a patentee is not required to provide actual working examples").

Inventions not yet reduced to a working example may be non-obvious based on secondary considerations occurring later on. *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1577 (Fed. Cir. 1984) (finding "prophetic" invention to be non-obvious based on problem solved and unexpected results); *Allergan*, 796 F.3d at 1305 (similar). All of the evidence on which Hafeman relies occurred after The Retriever was completed. Op.-Br., 23-24, 51.

Second, Appellees argue that Hafeman cannot show nexus because she did not submit a patent owner declaration or use the words "coextensive" or "coextensiveness" in her briefing. G-Br., 50, 52. But this Court does not require a "limitation-by-limitation analysis" or "documentary evidence" to prove a presumption of nexus. *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1073 n.7 (Fed. Cir. 2018); *Volvo Penta of the Americas, LLC v. Brunswick Corp.*, 81 F.4th 1202, 1212 (Fed. Cir. 2023) ("limitation-by-limitation analysis" not required).

Nor does this Court "require the use of magic words" in making arguments. *Netflix, Inc. v. DivX, LLC*, 80 F.4th 1352, 1360 (Fed. Cir. 2023). Hafeman explained that "The Retriever and its features are described extensively in the patent specification and drawings" and pointed to Figure 2, which specifically references

and shows "The Retriever" product. Appx8304-05, Appx8207 ("Patent Owner's invention was commercialized under the name of 'The Retriever.'"). Appellees fail to explain how that was not enough for the PTAB to understand Hafeman's position that The Retriever is the invention. *Henny Penny*, 938 F.3d at 1334 (patents not obvious based on praise, without mentioning the term "coextensiveness").

Notably, the PTAB did not point to any limitation it found missing in The Retriever. *Polaris*, 882 F.3d at 1073 (reversing lack of presumed nexus where "the Board did not point to any limitation it found missing in the [products]" and "where the proffered evidence is not rebutted and the technology is relatively simple"). Appellees have never pointed to any such missing limitation in The Retriever.

Finally, Appellees state that "anticipation requires a showing that each claim element is found" in the reference. G-Br., 54. Appellees do not explain how a product that meets "each" element would not embody the claimed features and be coextensive with them. *Volvo*, 81 F.4th at 1210 ("The inclusion of noncritical features [in product] does not defeat a finding of a presumption of nexus."); *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 734, 747 (Fed. Cir. 2016) (nexus may exist "even when the product has additional, unclaimed features").

LG's factual admission that The Retriever met each limitation of the claims—and Appellees' concessions here—demonstrates nexus, regardless of whether the

court reached this issue. *Henny Penny*, 938 F.3d at 1334 (petitioner agreed that product was "commensurate" with claims); *U.S. v. Nelson*, 868 F.3d 885, 890-91 (10th Cir. 2017) ("statements in briefs and at oral argument may, in court's discretion, operate as judicial admissions"); *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) ("Pleadings in a prior case may be used as evidentiary admissions.").

### B. The PTAB Erred in Giving No Weight to Praise, Commercial Success, and Copying of the Invention.

Praise: Appellees argue that the praise of The Retriever was "focus[ed]" on unclaimed features. G-Br., 57. The PTAB and Appellees point to the "headlines" of the articles, but they fail to address the extensive praise in the articles themselves. Appx7728-29. The brochure in the 2011 Vator start-up competition does not even discuss the unclaimed audio feature. Appx7737. The PTAB ignored this significant praise. *Volvo*, 81 F.4th at 1214 (PTAB failed to give adequate explanation of praise, where it was directed towards both claimed and unclaimed features); *Henny Penny*, 938 F.3d at 1334 ("industry praise is probative of nonobviousness even if it was not precisely limited to the point of novelty of the claimed combination").

Commercial Success: Hafeman discussed the commercial success of The Retriever in the IPRs below. Appx8306 (The Retriever had "thousands of customers" and cost "$29.95") (citing Appx7738, Appx7728). Here, Hafeman submitted similar financial information, totaled together, based on other evidence in

the record. Appx1333, Appx1378. There has been no waiver. *Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*, 68 F.4th 1298, 1305 (Fed. Cir. 2023) ("The exact phrasing of the argument need not have been used below so long as it can be said that the tribunal was fairly put on notice as to the substance of the issue.") (citing *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000)).

Appellees argue that the only evidence presented to the PTAB was "the number of website visitors, not actual paying customers." G-Br., 59. That is not correct. Appx8306 (citing Appx7738) (naming "educational customers" such as Brown University, and corporate customers such as Staples and Office Max); Appx7729 ("The company is getting orders from Paris, Denmark, Thailand, South Africa, the South Pacific, South Korea, Norway, and Pakistan.").

Copying: Appellees and the PTAB fail to apply the correct test for copying. *Medtronic, Inc. v. Teleflex Innovations S.a.r.l.*, 70 F.4th 1331, 1340 (Fed. Cir. 2023) ("Evidence of access and substantial similarity *is* evidence of copying."). Hafeman presented evidence of both "access," in the form of a widely-available product on the market, and "substantial similarity" of the Find My Device products. Op.-Br., 24 (citing Appx3792, Appx3855). That is evidence of copying. *Medtronic*, 70 F.4th at 1340 (copying shown were the competing products are "substantially similar in design to then-existing [patented] products on the market"). Appellees do not

identify any difference between the Find My Device products and Hafeman's claims. There is no final judgment of non-infringement in district court.

* * *

The PTAB's multiple errors on secondary considerations are not supported by substantial evidence.

## CONCLUSION

The IPRs should be terminated, or alternatively, the FWDs should be reversed, vacated, and remanded.

Dated: February 20, 2025

Respectfully submitted,

*/s/ Lawrence M. Hadley*

Lawrence M. Hadley
Stephen Underwood
Jason C. Linger
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
10250 Constellation Blvd., Floor 19
Los Angeles, CA 90067
(310) 553-3000

*Attorneys for Appellant*
*Carolyn W. Hafeman*

## CERTIFICATE OF SERVICE

I certify that counsel for the parties have been served with a true and correct copy of the foregoing document via the Court's CM/ECF system on February 20, 2025.

Dated: February 20, 2025

Respectfully submitted,

*/s/ Lawrence M. Hadley*
Lawrence M. Hadley
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
10250 Constellation Blvd., Floor 19
Los Angeles, CA 90067
(310) 553-3000

*Attorney for Appellant*
*Carolyn W. Hafeman*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a) or Federal Rule of Federal Circuit Rule 28.1. This brief contains 6,941 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Times New Roman font.

Dated: February 20, 2025

Respectfully submitted,

*/s/ Lawrence M. Hadley*

Lawrence M. Hadley
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
10250 Constellation Blvd., Floor 19
Los Angeles, CA 90067
(310) 553-3000

*Attorney for Appellant*
*Carolyn W. Hafeman*