# United States Court of Appeals for the Federal Circuit

---

**CAROLYN W. HAFEMAN,**
*Appellant*

**v.**

**GOOGLE LLC, MICROSOFT CORPORATION,**
*Appellees*

**JOHN A. SQUIRES, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2024-1600, 2024-1601, 2024-1602, 2024-1603, 2024-1604, 2024-1605

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2022-01188, IPR2022-01189, IPR2022-01190, IPR2022-01191, IPR2022-01192, IPR2022-01193.

---

Decided: June 5, 2026

---

LAWRENCE MILTON HADLEY, Glaser Weil Fink Howard Jordan & Shapiro LLP, Los Angeles, CA, argued for appellant. Also represented by JASON LINGER, STEPHEN UNDERWOOD.

ANDREW BALUCH, Smith Baluch LLP, Washington, DC, argued for appellees. Appellee Google LLC also represented by ELIZABETH LAUGHTON, MATTHEW A. SMITH.

CARRIE ANNE BEYER, Faegre Drinker Biddle & Reath LLP, Chicago, IL, for appellee Microsoft Corporation. Also represented by BRIANNA LYNN SILVERSTEIN, Washington, DC; KIRSTIN STOLL-DEBELL, Denver, CO.

SHEHLA WYNNE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor. Also represented by NICHOLAS THEODORE MATICH, IV, ROBERT J. MCMANUS, MAUREEN DONOVAN QUELER.

---

Before DYK, HUGHES, and STOLL, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Carolyn Hafeman appeals from final written decisions of the Patent Trial and Appeal Board in inter partes reviews of U.S. Patent Nos. 10,325,122; 10,789,393; and 9,892,287. The Board concluded that all challenged claims were unpatentable. For the reasons below, we *dismiss-in-part* and *affirm-in-part*.

# I

## A

Ms. Hafeman owns U.S. Patent Nos. 10,325,122; 10,789,393; and 9,892,287 (collectively, the Challenged Patents), which are part of the same family and share a common specification. The ’122 patent, which is representative for purposes of this appeal, generally relates “to the return of lost or stolen computers using a recovery screen that appears during or after boot-up of the computer.” ’122 Patent, 1:25–27. Specifically, it describes methods for “displaying

information to assist with returning a computer to its owner," comprised of "activating a computer" and then automatically displaying a return screen containing information stored in the computer's memory regarding the computer's owner and how the computer may be returned to the owner. *Id.* 4:1–10; *see also id.* 3:30–38, 5:28–31. Figure 3 is a flow chart capturing an embodiment of the claimed method:



*Id.* fig. 3. This embodiment requires first powering on the computer, after which the recovery/return information is automatically displayed either prior to, or alongside, the login screen. *Id.* Claim 1 is representative on appeal and recites:

> 1. A method for displaying information to assist with returning a computer comprising the steps of:
>
> activating a processor to display on a display screen on the computer which displays information concerning return information for returning the computer to an owner from data stored in a memory of the computer, the screen displaying return information before or with a lock screen, to facilitate return of the computer and which is maintained on or before or with the lock screen so the return information is visible to anyone viewing the display screen, the lock screen locks the display screen and protects the computer;
>
> initiating or changing return information which appears on the display through remote communication ***without assistance by a user with the computer***, wherein the changing of the return information is done through an interactive program stored in the memory of the computer which is remotely accessed only by the owner of the computer or the party authorized by the owner to enable the initiating or changing of the display screen;
>
> displaying the screen before or with a security prompt which prevents the user from accessing operatively the computer; and
>
> activating the processor to allow a message to the user.

*Id.* claim 1 (emphasis added). Critical to this appeal is the claimed step of "initiating or changing return information which appears on the display through remote communication ***without assistance by a user*** with the computer" (the "without assistance" limitation). *Id.* (emphasis added).

B

In July 2021, Ms. Hafeman filed suit against LG Electronics Inc. in the United States District Court for the Western District of Texas, alleging infringement of the three Challenged Patents (the LG Litigation). The accused infringing products were LG-made phones, tablets, and laptops that were sold with pre-loaded Google or Microsoft "Find My Device" features.

In July 2022, Google and Microsoft filed six IPR petitions against the Challenged Patents, naming LG as a real party in interest. Google and Microsoft filed two IPR petitions against each of the three Challenged Patents: One petition attacked the priority dates of each of the Challenged Patents and asserted prior art based on the assumption of a post-America Invents Act (AIA) priority date. The other petition assumed the accuracy of the earlier claimed priority dates and argued the claims of each of the Challenged Patents were still unpatentable based on *pre*-AIA prior art. Ms. Hafeman opposed institution, arguing that pursuant to the then-Director's guidance,[1] institution should be denied given the existence of a parallel district court proceeding, the LG Litigation, involving the same patents and

---

[1] USPTO Director Vidal, *Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation* (issued June 21, 2022) (rescinded Feb. 28, 2025) (Director Guidance), https://www.uspto.gov/sites/default/files/documents/interim_proc_discretionary_denials_aia_parallel_district_court_litigation_memo_20220621_.pdf [https://perma.cc/7CJ5-JRSG].

presenting overlapping issues. *See* J.A. 8018–31. She emphasized that there had already been significant investments in the district court litigation, trial was imminent, and that there was no agreement between the parties to minimize duplication of efforts between the district court and Board proceedings, all of which supported denying institution.

After Ms. Hafeman filed her opposition to Google and Microsoft's IPR petitions, LG served her with a so-called "*Sotera* stipulation" in the LG Litigation. *See* J.A. 4375 (citing *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 at 18–19 (P.T.A.B. Dec. 1, 2020)). In it, LG represented that, if any of the IPRs were to be instituted, LG would not pursue in the parallel district court proceeding "any ground that [Google or Microsoft] raised or reasonably could have raised" in the IPRs. *Id.* (alteration in original) (quoting 35 U.S.C. § 315(e)). Google and Microsoft then argued that LG's stipulation eliminated efficiency concerns because LG was named as a real party in interest in the IPR proceedings and because there was no risk that additional parties would be added to the district court litigation who would not be bound by the stipulation because the deadline for adding parties had passed. Thus, in light of the Director's guidance representing that the Board would not "discretionarily deny institution in view of parallel district court litigation where a petitioner presents [such] a stipulation," Google and Microsoft argued that institution was appropriate. Director Guidance at 3; *see* J.A. 8066–67.

The Board agreed with petitioners Google and Microsoft and, in January 2023, instituted review on all grounds for each of the challenged patents, resulting in six IPR proceedings. *See* J.A. 8094, 9020, 9803, 10173, 11015, 11393. Ms. Hafeman belatedly requested rehearing of the Board's institution decision, arguing that rehearing was warranted in light of an intervening precedential Board decision and LG's purported violation of the *Sotera* stipulation in the LG Litigation. The Board denied Ms. Hafeman's

request, explaining that the intervening Board decision was inapplicable and any violation of the *Sotera* stipulation was an issue for the district court to resolve. *See* J.A. 7830. Ms. Hafeman continued to argue that institution was improper, suggesting in her Patent Owner's Response that because the district court had since concluded that LG violated the *Sotera* stipulation in the LG Litigation, the "Board should exercise its authority to vacate the institution decision and terminate the IPR." J.A. 8176.

C

On January 23, 2024, the Board issued three final written decisions, one for each of the Challenged Patents.[2] *See, e.g.*, *Google LLC v. Hafeman*, Nos. IPR2022-01188, IPR2022-01189, Paper No. 32, 2024 WL 250494 (P.T.A.B. Jan. 23, 2024) (*Decision*). The Board did not revisit Ms. Hafeman's continued *Sotera*- and institution-related arguments in its decision. *See generally id.* Regarding the substantive merits of the petitions, the Board declined to resolve the priority date dispute, finding that even under the earliest possible priority date, the Challenged Patents' claims were nonetheless unpatentable over the combination of Jenne[3] and Cohen,[4] the pre-AIA prior art.

---

[2] As noted, Google and Microsoft filed two IPR petitions against each of the three Challenged Patents, resulting in six proceedings. The Board ultimately consolidated the IPR proceedings by patent, resulting in three Final Written Decisions (FWDs). Like the parties, we generally cite to and reference the Board's decision regarding the '122 patent as representative on appeal. *See* Appellant Br. 19 (citing J.A. 1–36); Appellee Br. 18 (generally quoting from J.A. 1–36).

[3] U.S. Pat. Pub. No. 2003/0122864 A1.

[4] European Pat. App. No. 687968 A2.

As relevant here, Jenne discloses a computer system that displays "commercial messages" during user wait times, like the computer's boot up process, that can be "updated" remotely via the internet. J.A. 883. The Board's patentability analysis relied on Jenne teaching "changing the content of information through remote communication *without assistance by a user* with the computer," which, when combined with prior art not implicated by this appeal, rendered the challenged claims unpatentable. *See Decision*, 2024 WL 250494, at *10, *12 (emphasis added). In doing so, the Board rejected Ms. Hafeman's argument that Jenne failed to teach the "without assistance" limitation because Jenne requires the user "log in and establish an Internet connection so that communication can occur." *Id.* at *9. Ms. Hafeman argued that "[n]othing, other than turning on the computer, is required from the user" by the Challenged Patents' claims. J.A. 8186. And thus the user does not need to establish any internet connection, like Jenne requires. The Board rejected that argument, concluding that Jenne did teach the "without assistance" limitation because "without assistance by a user" refers to the action of "initiating or changing" the return information that is displayed to the user and does not, as Ms. Hafeman contended, extend to the "unrecited action of establishing the remote communication in the first instance." *Decision*, 2024 WL 250494, at *9. Finally, the Board rejected Ms. Hafeman's argument that there were strong secondary considerations of non-obviousness. *Id.* at *12–14. The Board concluded that Ms. Hafeman failed to prove a nexus between her purported commercial embodiment of the invention—known as the Retriever—and her evidence of praise, commercial success, and copying by others. *Id.* at *12.

Ms. Hafeman timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II

On appeal, Ms. Hafeman generally argues: (1) that the Board abused its discretion by failing to address her *Sotera*-related arguments in its FWDs; (2) that the Board wrongly construed "without assistance by a user," resulting in an erroneous obviousness finding; and (3) that the Board improperly disregarded secondary considerations of non-obviousness. We take each argument in turn.

### A

We first consider Ms. Hafeman's argument that the Board acted arbitrarily by issuing its FWDs without addressing her argument that the IPR proceedings should be terminated given the District Court's finding that LG violated the *Sotera* stipulation. Ms. Hafeman argues that because the PTAB instituted review based on the representations made in the *Sotera* stipulation, LG's post-institution violation of that same stipulation warranted terminating the Board's review or, at minimum, required an explanation in the FWD of "whether the violation warranted dismissal." Appellant Br. 33. Ms. Hafeman asks us to vacate the Board's decision and remand with instructions to the Board to "address the appropriate remedy for the proven *Sotera* violation." Appellant Br. 34.

Google and Microsoft contend that Ms. Hafeman's argument amounts to a challenge to the Board's decision to institute the IPR proceedings, which is barred from judicial review under 35 U.S.C. § 314(d). The Acting Director of the United States Patent and Trademark Office has intervened in support of this position. *See* Intervenor Br. 11–12.

Ms. Hafeman disagrees, arguing that she is not challenging institution; rather, she is "challenging how the IPR proceeded *after* institution." Appellant Reply Br. 2. She emphasizes that LG violated the *Sotera* stipulation after the Board instituted review, and she contends her appeal challenges the sufficiency of the Board's FWDs under the

APA given the Board's failure to address that violation. *See id.* at 2–4; *see id.* at 3 ("APA challenges of FWDs are reviewable."). On the present record, however, this is a distinction without meaningful difference.

A party does not automatically bypass § 314(d)'s bar on judicial review by characterizing its challenge as one to an agency action other than the decision to institute. *See, e.g.*, *Ethanol Boosting Sys., LLC v. Ford Motor Co.*, 162 F.4th 1151, 1158 (Fed. Cir. 2025). By statute, the decision whether to institute inter partes review is "final and nonappealable." 35 U.S.C. § 314(d). And this bar on judicial review extends both to direct challenges to the decision to institute review *and* to matters that are "closely tied to the application and interpretation of statutes related to" the decision to institute. *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275 (2016). Whether § 314(d) bars our review thus requires a close examination of the substance of a party's arguments and the relief sought to determine whether it amounts to a challenge, direct or indirect, to the decision to institute.

For example, the Supreme Court, considering § 314(d), held that the statute's language compels the conclusion "that a party generally cannot contend on appeal that the agency should have refused 'to institute an inter partes review.'" *Thryv, Inc. v. Click-To-Call Techs., LP*, 590 U.S. 45, 52 (2020). In *Thryv*, the question was whether a party's appeal from a final written decision holding that a petition was not untimely under 35 U.S.C. § 315(b) was barred from judicial review by § 314(d). *Id.* at 60. The Supreme Court concluded that, "even labeled as an appeal from the final written decision," the appeal was nonetheless still barred by § 314(d) because the "contention remain[ed], essentially, that the agency should have refused to institute inter partes review." *Id.* Thus, a challenge to institution-related determinations, even when part of an otherwise proper challenge to a final written decision, remains barred from review by § 314(d). That Ms. Hafeman purports to

challenge the FWDs does not enable our review when the heart of her challenge goes to institution.

Our own caselaw reinforces the application of this principle to Ms. Hafeman's present appeal. In *Federal Express Corp. v. Qualcomm Inc.*, we recently considered a party's challenge to a final written decision that was premised on the decision's failure to include any analysis of the appellant's argument that the IPR petition failed to identify all real parties in interest as required by 35 U.S.C. § 312(a)(2). *See* 174 F.4th 910, 914 (Fed. Cir. 2026). The appellant framed its challenge as "directed to the Board's conduct during and after institution" and thus outside the scope of § 314(d). *Id.* at 916. But we rejected that characterization and nonetheless held the challenge unreviewable under § 314(d) because it "still boil[ed] down to a challenge over whether there should have been institution at all." *Id.* at 917.

Similarly, in *Ethanol Boosting Systems, LLC v. Ford Motor Co.*, this court considered our ability to review a challenge to the Board's decision to defer ruling on a party's request for rehearing of an institution decision until after resolution of a related pending appeal before this court. *See* 162 F.4th at 1157–58. We rejected the appellant's characterization of its challenge as an attack on the Board's purported "stay" of its institution rehearing decision rather than a challenge to institution: "And so, despite [Appellant's] belief that it formally challenges the 'stay' rather than the reconsideration decision, we cannot see its argument as anything but a challenge to the propriety of the institution." *Id.* at 1158. And we held that "[p]ointing to a different agency action . . . does not automatically alter the analysis; § 314(d) applies when a party attempts to dislodge institution." *Id.* at 1159.

These cases confirm that Ms. Hafeman's challenge, while framed as one aimed at the sufficiency of the Board's FWDs, nonetheless remains beyond our review.

Ms. Hafeman's reliance on this court's decisions in *Uniloc 2017 LLC v. Facebook Inc.*, 989 F.3d 1018 (Fed. Cir. 2021), and *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321 (Fed Cir. 2020) is misplaced. She cites these cases for the proposition that "where an event leading to IPR termination occurs post-institution, like here, such challenges may be appealed." Appellant Reply Br. 4. But those cases deal with readily distinguishable challenges to the Board's estoppel determination and whether the Board erred in joining already-instituted IPR proceedings. *See Uniloc*, 989 F.3d at 1026–27 ("The Board's 'no estoppel' decision thus was later than and separate from its earlier institution decision, and . . . is a decision we may review." (citation omitted)); *Facebook*, 973 F.3d at 1332 ("In this case, Windy City's cross-appeal does not challenge the Board's decision to institute Facebook's follow-on petitions, but challenges whether the Board's joinder decisions exceeded the statutory authority provided by § 315(c).").

Here, the remedy Ms. Hafeman seeks, and its relationship to institution, eliminates any doubt that § 314(d) bars our review. Ms. Hafeman argues the Board "should have terminated the IPRs in light of the *Sotera* violation, or at minimum, addressed why the IPRs should proceed in the FWDs." Appellant Reply Br. at 9. And she requests that we vacate the Board's final written decisions and "remand with instructions to dismiss" the IPRs. *Id.* The problem with Ms. Hafeman's challenge is that it seeks to terminate the IPRs for reasons related to the institution decision because the *Sotera* stipulation was a consideration for institution. This makes clear that her challenge "has institution as its direct, immediate, express subject" and is thus beyond our review. *IGT v. Zynga Inc.*, 144 F.4th 1357, 1365 (Fed. Cir. 2025) (cleaned up) (quoting *Apple Inc. v. Vidal*, 63 F.4th 1, 12 (Fed. Cir. 2023)). This is not a situation where our review of termination is unrelated to the institution decision. *Cf. Atlanta Gas Light Co. v. Bennett Regul. Guards, Inc.*, 33 F.4th 1348, 1353 (Fed. Cir. 2022) ("[W]e

cannot conclude that the Board's decision [terminating the petition] was purely a sanctions decision over which we ordinarily would have jurisdiction."). Accordingly, Ms. Hafeman's challenge is barred from judicial review by § 314(d), and we must dismiss this portion of her appeal.

B

We next consider Ms. Hafeman's allegation of error in the Board's purported implicit construction of the "without assistance" limitation. Appellant Br. 35. Ms. Hafeman did not propose a construction of the "without assistance" limitation to the Board. But, on appeal, she suggests that the Board nonetheless implicitly construed the limitation when the Board found that Jenne taught the "without assistance" limitation despite requiring the user first connect the device to the internet. Google and Microsoft argue that the Board did not engage in implicit claim construction; rather, the Board "performed a factual comparison of the process in Jenne to the process described in the challenged patents' specification and found them to be similar." Appellee Br. 34 (citing *Apple Inc. v. Uniloc 2017 LLC*, 843 F. App'x 281, 286 (Fed. Cir. 2021)). Ordinarily this distinction is critical because it dictates our standard of review. *See CRFD Rsch., Inc. v. Matal*, 876 F.3d 1330, 1336–37 (Fed. Cir. 2017) ("We review the Board's factual findings for substantial evidence and its legal conclusions de novo."). But where, like here, the outcome is the same whether reviewed de novo as an implicit claim construction, or for substantial evidence as only a factual comparison to the prior art, the distinction becomes inconsequential.

Assuming without deciding that the Board construed the "without assistance" limitation to not prohibit a user from connecting the device to the internet, we see no error in that construction and affirm. On appeal, Ms. Hafeman suggests that the "without assistance" limitation means that the "user *cannot* provide *any assistance whatsoever*

(besides turning on power) to receive return and recovery information, including the establishment of an Internet connection." Appellant Br. 35. But that construction conflicts with the claim's plain language. *See Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1148 (Fed. Cir. 2003) ("Claim construction begins with the words of the claim."). This is clear from a review of the contested claim language in context:

> *initiating or changing return information which appears on the display through remote communication without assistance by a user with the computer*, wherein the changing of the return information is done through an interactive program stored in the memory of the computer which is remotely accessed only by the owner of the computer or the party authorized by the owner to enable the initiating or changing of the display screen;

'122 Patent claim 1 (emphasis added). Ms. Hafeman concedes that some connection is required, but nowhere in the patent's claim does it speak to *who* does, or does not, establish that connection. *See* Appellant Br. 38 ("Of course, the computer must be powered on, and there *must be some form of connection available*." (emphasis added)). We agree with the Board—"without assistance by a user" modifies the action of "initiating or changing return information"; it does not limit the unrecited action of establishing an internet connection in the first instance. '122 Patent claim 1; *see Decision*, 2024 WL 250494, at *9.

Ms. Hafeman's suggested construction also conflicts with the language in the specification. *See Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1346 n.4 (Fed. Cir. 2020) ("We note that when a construction such as this is inconsistent with the plain language of the claims and the written description, it is incorrect."). The specification emphasizes that it is the claimed invention's ability to

remotely communicate updates to the display message and recovery data that makes its design unique. *See* ’122 Patent, 13:43–67. This “unique communication power” allows the owner to upload changes to the recovery center that are then downloaded to the protected device such that the information in the recovery center and the information displayed on the device’s screen is the same. *Id.* 14:22–27. The specification notes that this claimed improvement “is a combination” of PDA-type synchronization and the “McAfee anti-virus software Internet updating capability ***where every time you go on-line***, your computer 12 automatically checks to make sure that you have the most current anti-virus software and automatically updates your computer 12 with the latest changes.” *Id.* 14:27–33 (emphasis added). Thus, contrary to Ms. Hafeman’s arguments on appeal, the specification contemplates that a user might initiate the internet connection.

Finally, Ms. Hafeman’s argument that the prosecution history supports her position on appeal is unpersuasive. Ms. Hafeman emphasizes that the “without assistance” limitation was added during prosecution of the parent application to overcome a piece of prior art, Broyles, requiring the computer’s user to push a specific interrupt key to initiate the remote change in ownership information. *See* J.A. 1142–43. She argues this makes clear that the “without assistance” limitation cannot be satisfied if a user is required to press an interrupt key, which logically means it is not satisfied where a user must establish an internet connection. We are unconvinced. At most, the prosecution history demonstrates an intent to bypass Broyles’ requirement that the user push an interrupt key to specifically initiate the process for changing the ownership information. *See* J.A. 1142 (“When it is desired to change the ownership information regarding ownership tag, Broyles teaches this is done by a user depressing a suitable key, generating a keyboard interrupt during step 610.”). And we agree with the Board that Jenne discloses making remote updates

without relying on the user to press a specific key to initiate the change. *See Decision*, 2024 WL 250494, at *10.

For these reasons, we reject Ms. Hafeman's suggestion that the Board erroneously construed the "without assistance" limitation. In light of this holding, we do not need to reach Ms. Hafeman's dependent argument that the Jenne-Cohen combination fails to meet the "without assistance" limitation under her suggested construction.

C

Lastly, we consider Ms. Hafeman's suggestion that the Board's analysis of secondary considerations of non-obviousness warrants reversal. Evidence regarding secondary considerations of non-obviousness must be considered, if present, in an obviousness determination. *See Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 315 (Fed. Cir. 1985). This includes evidence of commercial success, copying, industry praise, skepticism, long-felt but unsolved need, and failure of others. *Volvo Penta of the Ams., LLC v. Brunswick Corp.*, 81 F.4th 1202, 1212 (Fed. Cir. 2023). But for such evidence to be given weight, the "proponent must establish a nexus between the evidence and the merits of the claimed invention." *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995). A presumption of a nexus arises when the patentee shows that the asserted secondary evidence "is tied to a specific product that 'embodies the claimed features, and is coextensive with them.'" *Volvo*, 81 F.4th at 1210 (citation omitted). Absent this presumption, the patentee may still establish a nexus by showing that the proffered evidence of secondary considerations "is the 'direct result of the unique characteristics of the claimed invention.'" *Id.* (citation omitted). We review the weight given to evidence of secondary considerations for substantial evidence. *Id.* at 1212–13 ("The weight to be given to evidence of secondary considerations involves factual determinations, which we review only for substantial evidence.").

Ms. Hafeman suggests there was strong evidence of various secondary considerations, including praise for the commercial embodiment of the invention, the Retriever; commercial success; and copying by others. And she asserts various errors on appeal. First, Ms. Hafeman argues that the Board erroneously found there was no nexus between the Retriever and the claimed invention given that the patent specification repeatedly references the Retriever product. Second, she argues that the Board denied a nexus without providing any explanation. Neither of these arguments are persuasive. The former argument is unavailing because the nexus analysis compares the specific product not to the patent's specification but to the patent's claims. *See id.* at 1210 (explaining nexus can be shown when a specific product "embodies the *claimed* features" or when secondary consideration evidence is the "direct result of the unique characteristics of the *claimed* invention" (emphasis added) (citations omitted)). And the latter argument—made in a single sentence without any citation to the underlying record—is borderline frivolous. The Board's analysis of secondary considerations is thorough and spans several pages. The Board first recounts Ms. Hafeman's failure to make any argument as to co-extensiveness, eliminating the possibility of a presumption of nexus. *Decision*, 2024 WL 250494, at *12. And it then separately weighs the remaining evidence to conclude that she failed to "prove a nexus independently" of any such presumption. *Id.*; *see id.* at *12–14. This is an adequate explanation of its rationale, and its conclusion is supported by substantial evidence.

Ms. Hafeman's remaining arguments fare no better. She argues that the Board was mistaken when it found that praise for the Retriever was directed to non-patented features, that the Board erred when it found that her claims of commercial success were unsupported, and that the Board erroneously rejected evidence of Google and Microsoft's copying. As the Board noted, Ms. Hafeman's evidence of industry praise repeatedly highlighted the

*un*patented features of the product, namely that the Retriever includes a verbal alarm component. *See id.* at *12–13; *see also* J.A. 7729 (newspaper article entitled "*Talking* software goes global" (emphasis added)). That there may also be some praise for patented features is insufficient under our standard of review to warrant reversal. *See Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Further, while Ms. Hafeman submitted evidence of visitors to the product's website and mentioned pricing at oral argument, she made no argument to the Board that connected this purported evidence of commercial success *to the merits of the invention*. *See Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed. Cir. 1983) (discounting evidence of commercial success where there was "no evidence of a nexus between sales and the merits of the invention"). And Ms. Hafeman's arguments to the Board only briefly mentioned Google and Microsoft's Find My Device programs—she never stated that those programs were evidence of copying. *See* J.A. 8208, 8306; *see also Decision*, 2024 WL 250494, at *13 ("Patent Owner does not explain how Google's and Microsoft's Find My Device features are evidence of non-obviousness of the '122 patent claims."). Ms. Hafeman's attempts to do so now are improper. *See Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1382 (Fed. Cir. 2023) (finding arguments forfeited when not raised below).

For the reasons above, we conclude that the Board's findings regarding the secondary considerations of non-obviousness are supported by substantial evidence and affirm.

## III

We have considered Ms. Hafeman's remaining arguments and find them unpersuasive. For the foregoing reasons, we *dismiss-in-part* and *affirm-in-part*.

**DISMISSED-IN-PART, AFFIRMED-IN-PART**

COSTS

Costs against appellant.